**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHWAB CAPITAL TRUST on behalf of its series SCHWAB TOTAL STOCK MARKET INDEX FUND, SCHWAB HEALTH CARE FUND, SCHWAB DIVIDEND EQUITY FUND, SCHWAB LARGE-CAP GROWTH FUND, SCHWAB S&P 500 INDEX FUND, SCHWAB CORE EQUITY FUND, SCHWAB HEDGED EQUITY FUND, SCHWAB U.S. LARGE-CAP GROWTH INDEX FUND, and SCHWAB FUNDAMENTAL US LARGE COMPANY INDEX FUND; *et al.*;<br><br>    *Plaintiffs*;<br><br>  v.<br><br>CELGENE CORPORATION; *et al*.;<br><br>    *Defendants*. | Civil Action No. 20-3754<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs filed this matter after deciding not to participate as a class member in *In re Celgene Corporation Securities Litigation*, Civil Action No. 18-4772 (the "Class Action"), a class action presently pending before this Court. Plaintiffs in both matters allege that Celgene Corporation ("Celgene") and several of its officers and/or employees engaged in fraud under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*, as to public statements relating to two drugs in Celgene's new product pipeline. Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u *et seq.* D.E.

6.   The Court reviewed the parties' submissions in support and in opposition,[1] and decided the

motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the

reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

## I.   INTRODUCTION

### A.  Background

Plaintiffs' allegations here mirror those pled in the Class Action.  In fact, the vast majority

of Plaintiffs' Complaint is copied from the operative Complaint in the Class Action (the "Class

Action Complaint").  As a result, the Court incorporates the detailed factual background from its

December 19, 2019 Opinion that granted in part and denied in part the motion to dismiss the Class

Action Complaint, D.E. 75, into the present Opinion.

Briefly, Celgene manufactures and sells the multiple myeloma drug Revlimid, which

between 2014 and 2016, accounted for more than sixty percent of Celgene's total net sales.[2]

Compl. ¶ 1.  The Revlimid patent expires in 2022.  *Id.*  Plaintiffs allege that Defendants[3] made

---

[1] Defendants' moving brief will be referred to as "Defs. Br.," D.E. 6-1; Plaintiffs' opposition will be referred to as "Plfs. Opp," D.E. 10; and Defendants' reply will be referred to as "Defs. Reply," D.E. 17.

[2] The facts are derived from Plaintiffs' Complaint.  D.E. 1.  When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Additionally, a district court may consider "exhibits attached to the complaint and matters of public record," as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] The defendants in this matter are Celgene; Scott A. Smith, Celgene's President and Chief Operating Officer from April 1, 2017 until April 2, 2018, Compl. ¶ 52; Terrie Curran, President of the Global Inflammatory & Immunology ("I&I") franchise during the time frame at issue, *id.* ¶ 53; and Philippe Martin, Managing Director of Receptos and Celgene's Corporate Vice President during the relevant time frame, *id.* ¶ 54.

material misrepresentations and omissions about two drugs, Otezla and Ozanimod, which Celgene touted as products to lessen the anticipated revenue drop following the Revlimid patent expiration.

Otezla is an oral medication used to treat psoriatic arthritis and psoriasis that was approved by the FDA in March 2014. *Id.* ¶¶ 95-96.  In a January 12, 2015 press release, Celgene set out its five-year strategic growth plan, in which Celgene maintained that "Otezla net product sales would grow to between $1.5 billion and $2 billion in 2017." *Id.* ¶ 97.  Throughout 2015 and 2016, Defendants publicly represented that Celgene was on-track to meet the 2017 sales projection. *Id.* ¶¶ 120-23, 131.  Internally, however, Defendants purportedly received explicit warnings that the 2017 projection was unattainable. *See, e.g.*, *id.* ¶¶ 123-28, 146.  On October 26, 2017, Celgene "stunned the market by announcing that, in light of the dismal Otezla sales numbers, the Company had slashed the 2017 guidance by more than $250 million" and lowered the 2020 I&I guidance by over $1 billion. *Id.* ¶ 152.  After this announcement, the price of Celgene common stock declined more than 16%. *Id.* ¶ 158.

Ozanimod is the second drug at issue in this matter.   On July 14, 2015, Celgene purchased Receptos, a company that initially developed Ozanimod, for $7.2 billion. *Id.* ¶ 159-60.  Clinical studies indicated that Ozanimod could be useful in treating ulcerative colitis and relapsing multiple sclerosis.  In announcing the acquisition, Celgene "projected annual Ozanimod sales of up to $6 billion." *Id.* ¶ 160.  Ozanimod was not approved by the U.S. Food and Drug Administration ("FDA") when Celgene acquired Receptos, but Celgene anticipated filing a New Drug Application ("NDA") for Ozanimod with the FDA in 2017. *Id.* ¶¶ 164, 69.

Through a Phase I trial that Celgene started in October 2016, Celgene identified a metabolite named CC112273 (the "Metabolite"), "which triggered the need for the additional testing described in the FDA guidance," before FDA approval. *Id.* ¶ 186.  Despite the need for

additional testing after discovery of the Metabolite, Defendants continued to represent that Celgene was on track to submit the NDA before the end of 2017 and failed to disclose information about the Metabolite. *See, e.g.*, *id.* ¶¶ 190, 195-96, 201. Even after the FDA expressly informed Celgene that it needed to include the Metabolite testing results with its NDA submission, Celgene continued to move forward with its plan to submit the NDA in December 2017 without the Metabolite study results. *Id.* ¶¶ 210-12.

As planned, Celgene submitted the NDA in December 2017. *Id.* ¶ 213. But on February 27, 2018, Celgene disclosed that it received a refuse to file ("RTF") letter from the FDA in response to its NDA submission. An RFT letter indicates that the FDA "identifie[d] clear and obvious deficiencies" in the NDA. *Id.* ¶¶ 217-18. As a result of the RFT announcement, Celgene's common stock fell from $95.78 per share on February 27, 2018 to $87.12 per share on February 28, 2018. *Id.* ¶ 224. Then on April 29, 2017, Plaintiffs allege that the market learned through a Morgan Stanley report that additional testing on the Metabolite was required, which could delay the refiling of the Ozanimod NDA by up to three years. *Id.* ¶ 226. Celgene's common stock fell again, from $95.78 per share on April 27, 2018 to $87.10 per share on April 30, 2018. *Id.*

### B. Procedural History

Plaintiff the City of Warren General Employees' Retirement System filed the initial complaint in the Class Action on March 29, 2018. Civ. No. 18-4772, D.E. 1 (D.N.J. Mar. 29, 2018). On May 3, 2018, Plaintiff Charles H. Witchcoff filed a class action complaint asserting similar securities fraud claims against Celgene and certain Celgene executives. By May 29, 2018, ten parties had filed motions to consolidate the cases and appoint a lead plaintiff. On September 26, 2018, this Court consolidated the two cases; appointed AMF Pensionsforsakring AB ("AMF") as the lead plaintiff; and appointed class counsel. Civ. No. 18-4772, D.E. 36 (D.N.J. Sept. 26,

2018).  AMF filed the Class Action Complaint on February 27, 2019, alleging violations of Section 10(b) and Rule 10b-5, and Section 20(a) of the Exchange Act.  Civ. No. 18-4772, D.E. 57 (D.N.J. Feb. 27, 2019).

Defendants filed a motion on February 8, 2019 seeking to dismiss the Class Action Complaint, in its entirety, pursuant to Rule 12(b)(6) and the PSLRA.  Civ. No. 18-4772, D.E. 52 (D.N.J. Feb. 8, 2019).  On December 19, 2019, the Court granted in part and denied in part Defendants' motion to dismiss (the "MTD Opinion").  The Court dismissed AMF's Section 20(a) claim and narrowed the Section 10(b) and Rule 10b-5 claim, as the Court determined that many of the alleged misrepresentations and omissions were not actionable.  Civ. No. 18-4772, D.E. 75, 76 (D.N.J. Dec. 19, 2019).

Shortly after, on May 7, 2020, Plaintiffs filed this action.  D.E. 1.  Plaintiffs would have been class members in the Class Action.  Plaintiffs' Complaint asserts claims against four Defendants from the Class Action, pursuant to Section 10(b) and Rule 10b-5 of the Exchange Act, based on alleged misrepresentations regarding Otezla and Ozanimod.  With respect to Otezla, the alleged misstatements involve Celgene's ability to meet its 2017 sales projections.  All but one of the alleged Otezla misrepresentations are asserted in the Class Action Complaint.  As for Ozanimod, Plaintiffs allege that Defendants' statements about the plan to submit an NDA for Ozanimod by the end of 2017 were false or misleading because they failed to disclose Celgene's discovery of the Metabolite and need for additional Phase I testing.  All the alleged misstatements involving Ozanimod in Plaintiffs' Complaint also appear in the Class Action Complaint.

Defendants responded with the instant motion to dismiss.  D.E. 6.  Defendants seek to dismiss the Complaint in its entirety and largely rely on the MTD Opinion as the basis for dismissal.  Because this matter is virtually identical to the Class Action, Defendants are correct

that the MTD Opinion provides a guide for this Opinion.  Accordingly, the Court references and incorporates portions of the MTD Opinion into its analysis below.  In addition, on November 29, 2020, this Court granted AMF's motion for class certification in the Class Action (the "Class Cert. Opinion").  D.E. 114, 115, Civ. No. 18-4772 (D.N.J. Nov. 5, 2020).  Certain issues addressed in the Class Action Opinion also guide the Court's analysis here.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Defendants seek to dismiss the Complaint pursuant to Rule 12(b)(6) and the PSLRA.  Defs. Br. at 9.  Rule 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a motion to dismiss under Rule 12(b)(6), the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, the plaintiffs must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [their] claims."  *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions

disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiffs, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### B. PSLRA

The PSLRA imposes further pleading requirements. "The PSLRA established heightened pleading requirements for a plaintiff to meet in order to plead a cause of action successfully in class actions alleging securities fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013). The PSLRA "requires that a complaint state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Id.* at 241-42 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)) (internal quotations omitted). In other words, the plaintiffs bringing a claim involving an allegedly false or misleading statement must "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1), and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u-4(b)(2)." *Rahman*, 736 F.3d at 242 (quoting *Tellabs*, 551 U.S. at 321).

Both provisions of the PSLRA pleading standard require that facts be pled "with particularity," echoing the requirement set forth in Federal Rule of Civil Procedure 9(b).[4] *Id.* at

---

[4] Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Defendants do not separately move pursuant to Rule 9(b). As a result, the rule and its requirements are not discussed herein.

241 n.3.  The standard "requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  Section 78u-4(b)(1) also adds the requirement that where "an allegation regarding [a defendant's] statement or omission is made on information or belief," the plaintiffs must "state with particularity all facts on which that belief is formed"; that is, they must describe the sources of information with particularity, including "the who, what, when, where and how of the sources, as well as the who, what, when, where, and how of the information those sources convey." *Id.*; *see* 15 U.S.C. § 78u-4(b)(1).

As to the second element, under the PSLRA, the court must evaluate whether all the facts in the complaint as alleged, taken collectively, give rise to a "strong inference of scienter" – not whether any individual allegation viewed in isolation meets that standard.  *Tellabs*, 551 U.S. at 323.  In determining whether the pleaded facts give rise to a strong inference of scienter, the court must "take into account plausible opposing inferences."  *Id.*  This involves a comparative inquiry that evaluates how likely one conclusion is as compared to others, in light of the pleaded facts.  *Id.* Thus, the court must consider plausible, nonculpable explanations for the defendant's conduct as well as inferences favoring the plaintiffs.  *Id.* at 324.  Although the inference that the defendant acted with scienter need not be irrefutable, the inference must be more than merely "reasonable" or "permissible."  *Id.*  A complaint will survive only if a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*

## III.   ANALYSIS

As discussed, Plaintiffs' one-count Complaint alleges that Defendants violated Section 10(b) and Rule 10b-5.  To state a securities fraud claim pursuant to Section 10(b) and Rule 10b-5,

the plaintiffs "must allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).  Defendants' arguments in their motion to dismiss focus solely on the first and second elements.

As to the first element, plaintiffs must "identify a false representation of material fact or omission that makes a disclosed statement materially misleading." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1419 (3d Cir. 1997)).  "[A] fact or omission is material only if 'there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the "total mix" of information' available to the investor." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988)).  In other words, courts must "examine statements in the full context of the documents which they are a part" and not engage in a "selective reading" of the statements. *Pfizer, Inc.*, 754 F.3d at 168-69 (citing *Burlington Coat Factory*, 114 F.3d at 1426; *Tellabs*, 551 U.S. at 322).

Again, except for one new misrepresentation regarding Otezla, Plaintiffs pull their allegations from the Class Action Complaint.  To the extent Plaintiffs' allegations are premised on misrepresentations that the Court previously determined were actionable in the Class Action, Plaintiffs' claims are also actionable here.  In fact, Defendants concede that certain statements of the Complaint are actionable based on the MTD Opinion. *See* Defs. Br. at 10 (stating that one Otezla statement survived the MTD Opinion), *id.* at 16 (recognizing that AMF pled scienter for certain statements involving Ozanimod).  The parties, however, appear to have a different understanding of the scope of the MTD Opinion.  Accordingly, the Court discusses specific alleged

misrepresentations below, including the new Otezla allegation.   The Court also addresses Defendants' scienter arguments.

### A.   Otezla

#### 1.  September 12, 2016 Statement

In the MTD Opinion, the Court determined that Smith's statement on September 12, 2016 (pled at paragraph 397 of the Class Action Complain) constitutes puffery.  MTD Opinion at 34. Now, Plaintiffs argue that not all of Smith's September 12 statement should be construed as puffery.  Plfs. Opp. at 7.

In response to an analyst's question about Celgene's 2020 financial guidance, Smith stated as follows:

> Otezla is moving along very nicely at this point in time.  Looks like $1 billion in sales this year.  Again, launches all over the world next year.  I feel really great about where we are going and the numbers both in 2017 and 2020 that we put out there . . . . But we feel great about all the guidance it is been giving, the trajectory, and I am just excited to get it launched geographically, and there is lots of different places we can take the molecule.  So we are very, very excited about where we are with OTEZLA right now.

Compl. ¶ 237.

In the MTD Opinion, the Court determined that Smith's statement amounted to puffery because of the words "I feel really great" and "I am just excited."  MTD Opinion at 34.  The Court also noted that Smith did not discuss detailed financial numbers when responding to the question. *Id.*   Plaintiffs parse this phrase and argue that while some aspects of Smith's answer may be puffery, the statement that "Otezla is moving along nicely at this point in time" is actionable. Plaintiffs contend that this statement cannot be puffery because Smith was not describing his feelings.  Plfs. Opp. at 7.  Plaintiffs, however, provide no legal support for their assertion that puffery must describe feelings.

As discussed in the MTD Opinion, puffery amounts to "vague and non-specific expressions of corporate optimism on which reasonable investors would not have relied." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010); *see also Pfizer, Inc.*, 754 F.3d at 172 ("Moreover, the adjective 'spectacular' is the kind of vague and general statement of optimism' that 'constitutes no more than puffery and is understood by reasonable investors as such.'" (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999))).  The statement "moving along very nicely at this time" is a vague general statement reflecting optimism with Otezla's progress.  Moreover, courts must not engage in a "selective reading" of statements.  *Pfizer, Inc.*, 754 F.3d at 168-69 (citing *Burlington Coat Factory*, 114 F.3d at 1426; *Tellabs*, 551 U.S. at 322).  When read in combination with Smith's statements that "I feel great" and "I am just excited," a reasonable investor would construe the entire answer pled at paragraph 237 as puffery.  Accordingly, Defendants' motion to dismiss is granted on these grounds.

### 2. October 27, 2016 Statement

Next, Plaintiffs contend that the Court incorrectly considered cautionary language to determine that Smith's October 27, 2016 statement was protected by the PLSRA Safe Harbor.[5] Plfs. Opp. at 9-12.  The PSLRA Safe Harbor "immunizes from liability any forward-looking statement, provided that: the statement is identified as such and accompanied by meaningful cautionary language; or is immaterial; or the plaintiff fails to show the statement was made with actual knowledge of its falsehood."  *Avaya*, 564 F.3d at 254 (citing 15 U.S.C. § 78u-5(c)).  To fall within the Safe Harbor, Defendants must have included "meaningful cautionary language" that is "extensive and specific."  *Id.* at 254, 256 (internal quotations omitted).  "To suffice, the cautionary

---

[5] The October 27, 2016 statement was pled in the Class Action Complaint at paragraph 398 and appears in paragraph 239 of Plaintiffs' Complaint.

statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge." *Id.* (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 243 n.3 (3d Cir. 2004)). Finally, "[c]autionary statements disclosed in SEC filings may be incorporated by reference; they 'do not have to be in the same document as the forward-looking statements.'" *In re Aetna*, 617 F.3d at 282 (quoting *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 273 n.11 (3d Cir. 2005)). Oral forward-looking statements must also be accompanied with a cautionary statement or appropriate reference to a written cautionary statement. *In re Anadigics, Inc., Sec. Litig.*, No. 08-5572, 2011 WL 4594845, at *18 (D.N.J. Sept. 30, 2011).

Smith made the statement at issue on October 27, 2016 during a conference call with investors. Compl. ¶ 239. In the Class Action, Defendants provided the Court with the PowerPoint presentation for the October 27, 2016 conference call. The deck included a slide that had meaningful cautionary language. *See* Lustberg Class Action Decl., Ex. 37, D.E. 52-39, Civ. No. 18-4772 (D.N.J. Feb. 8, 2019). Defendants, however, did not provide a transcript of the October 27, 2016 call. Plaintiffs contend that this deck was not referenced in the Class Action Complaint and should not have been considered. Plaintiffs continue that the Court, therefore, erred in concluding that the statement was protected by the Safe Harbor due to the cautionary language in the deck. Plfs. Opp. at 9. Plaintiffs finally argue that because Defendants cannot establish that there was meaningful cautionary language through the Complaint alone, Smith's October 27, 2016 statement is not protected by the Safe Harbor. *Id.*

Defendants, however, provide a transcript of the call as an exhibit to their reply brief. *See* Lustberg Decl., Ex. 1. In deciding a motion to dismiss, a court ordinarily considers only the factual allegations, exhibits attached to the complaint, and matters of public record. A court may also rely

on "a document *integral to or explicitly relied* upon in the complaint."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (citation omitted).  A document is integral if a "claim would not exist but-for the existence of the document."  *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011).  Because Plaintiffs rely on a statement from the October 27, 2016 call to establish an actionable misstatement, the Court can consider the full transcript in deciding this motion, as it is integral to the Plaintiffs' pleadings.[6]

The transcript shows that at the beginning of the call, non-party Patrick E. Flanigan explained that "during today's call we will be making forward-looking statements regarding our financial outlook . . . and product development plans."  Lustberg Decl., Ex. 1 at 2.  He further explained that "[t]hese statements are subject to risks and uncertainties" and referenced the cautionary statement "in our most recent 10-K on file with the SEC."  *Id.*  The Court already addressed the cautionary language contained in Celgene's 10-Ks and concluded that it constituted meaningful cautionary language under the Safe Harbor.  Accordingly, the Court incorporates this analysis into this Opinion to conclude that there was meaningful cautionary language for Smith's October 27 statement.  *See* MTD Opinion at 31-32.  Thus, the Court again concludes that this statement is protected by the Safe Harbor.  Defendants' motion, therefore, is granted on these grounds.

---

[6] The fact that the transcript was submitted with Defendants' reply brief is immaterial.  *See, e.g.*, *Rao v. Anderson Ludgate Consulting, LLC*, No. 15-3126, 2017 WL 684517, at *2 n.3 (D.N.J. Feb. 21, 2017) (relying on document that was provided as an exhibit to a reply brief in deciding a motion to dismiss).

### 3. April 27, 2017 Statements

In the MTD Opinion, the Court determined that Curran's statement on April 27, 2017, pled at paragraph 409 of the Class Action Complaint, was actionable. MTD Opinion at 34, 42. Plaintiffs here also allege that this statement is a misrepresentation, *see* Compl. ¶ 247, and Defendants do not seek to dismiss this statement through the instant motion to dismiss. Plaintiffs argue that additional statements made April 27, 2017 statements are also actionable.[7]

Plaintiffs contend that a statement in Celgene's Form 8-K, which is attributed to Mark J. Alles, is actionable. Alles stated that Celgene's 2017 sales guidance for Otezla was unchanged and that "[o]ur significant first quarter operational, financial and strategic progress strengthen our confidence and outlook[.]"[8] *Id.* ¶¶ 246, 247. During the same call, Smith stated that "[t]he momentum we see in Q2 across a number of fronts gives us confidence that we will deliver on our full year 2017 guidance." *Id.* ¶ 248. In the MTD Opinion, the Court concluded that the "unchanged" statements and Smith's statement were forward looking and fell into the Safe Harbor. MTD Opinion at 32. Next, the Court determined that the remainder of Alles' statement was an accurate discussion of Celgene's first quarter sales. Accordingly, this aspect of the statement did not constitute a misrepresentation or omission. *Id.* at 33. Plaintiffs appear to miss the Court's specific references to each of these statements in the MTD Opinion. As a result, the Court incorporates its analysis from the MTD Opinion and concludes that none of the April 27, 2017 statements are actionable misrepresentations or omissions. Defendants' motion is also granted on these grounds.

---

[7] These statements are pled at paragraphs 405, 407, and 408 of the Class Action Complaint.

[8] The Court also notes that despite arguing that Alles made an actionable misstatement, he is not named as a Defendant in this matter.

### 4. "On Track Statements"

Next, Plaintiffs maintain that statements that Celgene was "on-track" to meet its 2017 Otezla target are not forward looking.[9]  Plfs. Opp. at 14-15.  Plaintiffs provide no legal analysis for this argument, which the Court addressed at length in the MTD Opinion.  MTD Opinion at 29-32.  Therefore, because Plaintiffs fail to identify any reason for the Court to change its previous analysis and conclusion, the Court incorporates this aspect of the MTD Opinion into the instant Opinion.  Defendants' motion is also granted on these grounds.

### 5. September 12, 2016 Statement

Plaintiffs' new allegation with respect to Otezla involves a statement made by Smith during a September 12, 2016 conference call.  Specifically, in response to a question about Otezla pricing, Smith stated that "[w]e believe that we should increase price *and we've got the value and the data to support increasing utilization, and [an] increasing value.*"  Compl. ¶ 238.  Plaintiffs argue that this statement is a misrepresentation because Smith concealed that Celgene was pursuing a pay-to-play strategy.  Plfs. Opp. at 15-16.  Defendants maintain that this is a non-actionable opinion.  Defs. Br. at 8.  The Court agrees with Defendants.  In arguing that Smith's comment is not an opinion, Plaintiffs focus on the second half of the statement, beginning with the "we've got the value and the data to support increasing utilization" and essentially ignore the first half of the sentence.  Plfs. Opp. at 16.  But reading the comment as a whole, the second half of Smith's representation is an explanation of why Smith "believes" that the price should increase.  Accordingly, the court views the comment, as a whole, to be an opinion.

---

[9] These statements are pled at paragraphs 241-43 and 251-52 of the Complaint, and paragraphs 400-02 and 412-13 of the Class Action Complaint.

"Opinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis." *Pfizer, Inc.*, 754 F.3d at 170.[10] Here, Plaintiffs plead sufficient facts to suggest that Smith's opinion lacked a reasonable basis and that he did not honestly believe that a price increase was appropriate. Namely, Plaintiffs allege that beginning in 2014, Smith was repeatedly warned that the pay-to-play strategy was flawed but Smith said that he would do "whatever it takes to get the business." Compl. ¶ 103. Moreover, the I&I Executive Committee ("IIEC"), of which Smith was a member, was informed about the "lack of growth in Otezla sales and its fundamental causes . . . by no later than the third quarter of 2016." *Id.* ¶ 124; *see also* ¶ 124 (explaining that the IIEC was expressly warned that the 2017 sales guidance could not be met in the third and fourth quarters of 2016). In other words, Plaintiffs sufficiently allege that Smith knew that his strategy was not sound and that, despite this information, he continued to pursue the pay-to-play plan. Consequently, Smith's September 12, 2016 statement is an actionable opinion under the PSLRA.

**B. Ozanimod**

Turning to Plaintiffs' Ozanimod allegations, Defendants argue that because the Court dismissed all but two Ozanimod statements in the MTD Opinion, the Court should do the same

---

[10] Plaintiffs also rely on *Omnicare v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015) to argue that Smith's statement is an actionable opinion. Plfs. Opp. at 16-17. In *Omnicare*, the Supreme Court determined that an opinion can be actionable if the speaker "omits material facts about the issuer's inquiry or knowledge concerning a statement of opinion," and "those facts conflict with what a reasonable investor would take from the statement itself." *Omnicare*, 575 U.S. at 189. *Omnicare*, however, addressed liability under § 11 of the Securities Act of 1933. *Id.* The Third Circuit has "not considered whether *Omnicare* applies to claims brought under the Exchange Act." *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 717 n.16 (3d Cir. 2020). In this instance, Plaintiffs assert claims under the Exchange Act. Because the Court concludes that Smith's statement is an actionable opinion under *Pfizer*, the standard that is recognized by the Circuit, the Court does not reach whether the *Omnicare* standard applies or if Smith's statement is an opinion under that standard.

here.  Defs. Br. at 15-16.  Defendants made a similar argument in opposition to AMF's motion for class certification in the Class Action, which the Court rejected.  Namely, the Court determined that AMF alleged scienter for Tran, Martin and Smith for the Ozanimod statements by April 2017, and that by this time, "statements attributable to Tran, Martin, and Smith were actionable."[11]  Class Cert. Opinion at 13, D.E. 114, D.E. 18-4772 (D.N.J. Nov. 29, 2020).  Thus, as discussed in the Class Certification Opinion, Smith's April 27, 2017 and July 27, 2017 statements are actionable. *Id.* at 13-14.

Defendants also contend that Smith's July 27, 2017 statement, Compl. ¶ 278, and a statement he made on October 26, 2017, Compl. ¶ 285, are protected by the Safe Harbor.  Defs. Br. at 18-19.  Smith's July 27 statements were not forward looking.  As reflected in the slide quoted in the Complaint, Smith was discussing Celgene's current data.  Specifically, that in light of the current data, Celgene was in a good position to submit its NDA at the end of the year.  Compl. ¶ 278.  As for Smith's October 26 statements, the transcript indicates that again, Smith was largely discussing events and data from the first two quarters of the year.  *See* Lustberg Cert., Ex. 19 at 7. These aspects of Smith's discussion were not forward looking.  Again, the slide at issue mentions data and the expected FDA filing.  But to the extent that Smith did mention events in the future, these forward-looking statements were accompanied by appropriate cautionary language.  *Id.* at 2. Accordingly, the forward-looking discussion is not actionable as it falls into the Safe Harbor.   But the non-forward looking components of the July 27 and October 26 statements are not protected by the Safe Harbor are actionable.  As discussed in the MTD Opinion, when discussing clinical Ozanimod data and the NDA filing, Smith was required to fully and truthfully discuss the results. MTD Opinion at 38-39.  Defendants' motion to dismiss is denied on these grounds.

---

[11] Tran is not named as a Defendant in this matter.

Plaintiffs next argue that official statements from Celgene that are not attributed to an individual are also actionable through Smith and Martin.[12]  Plfs. Opp. at 22.  Namely, Plaintiffs maintain that Smith and Martin were tasked with informing investors about the Ozanimod NDA. As a result, Plaintiffs continue, "it is more than plausible that they reviewed or helped craft the unattributed corporate statements on this subject." *Id.*

In the MTD Opinion, the Court noted that scienter for the Individual Defendants that made actionable misstatements is imputed to Celgene for those statements.  MTD Opinion at 46 n.28 (citing *Avaya*, 564 F.3d at 251-52).  Thus, to input scienter to Celgene for official company statements that are not attributed to a specific individual, Plaintiffs rely on the doctrine of corporate scienter.  "A plaintiff can use corporate . . . scienter to plead an inference of scienter against a corporate defendant without raising the same inferences required to attribute scienter to an individual defendant." *Rahman*, 736 F.3d at 246.

As discussed in the Class Certification Opinion, "[i]t is not clear whether scienter can be imputed to a corporation without first establishing scienter for a specific individual."  Class Cert. Opinion at 14 n.7 (citing *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 121 n.6 (3d Cir. 2018)). Defendants correctly indicate that "[u]nder Third Circuit law, . . . corporations generally cannot be held liable for false or misleading statements based upon the knowledge of individuals who did not make those statements."  Defs. Reply at 13-14.  The Third Circuit, however, has not outright

---

[12] Defendants appear to argue that all of Celgene's statements are actually attributed to Alles, Kellogg, and Curran.  Because the Court previously determined that AMF failed to adequately allege scienter for these Individual Defendants, Defendants now contend that every statement that was not made by Smith or Martin should be dismissed.  Defs. Reply at 13.  But many of the statements at issue are not attributed to a specific individual.  Rather, they are SEC filings and statements on Celgene's website.  *See, e.g.*, Compl. ¶ 267 (discussing Celgene's statement in a Form 8-K and the attached press release); ¶ 281-84 (discussing "a series of slides on [Celgene's] corporate website).

rejected the doctrine of corporate scienter. *See Rahman*, 736 F.3d at 246 ("We, however, neither have accepted nor rejected the doctrine of corporate scienter in securities fraud actions."). Moreover, courts in this district have applied the doctrine, albeit in limited circumstances. *See, e.g.*, *In re Cognizant Tech. Solutions Corp. Sec. Litig.*, No. 16-6509, 2020 WL 3026564, at *24-32 (D.N.J. June 5, 2020); *In re Cognizant Tech. Solutions Corp. Sec. Litig.*, No. 16-6509, 2018 WL 3772675, at *34 (D.N.J. Aug. 8, 2018). Critically, it appears that the doctrine should only be used "in unique and extraordinary circumstances." *Christian v. BT Grp. PLC*, No. 17-497, 2018 WL 3647213, at *7 (D.N.J. Aug. 1, 2018) (citing *City of Roseville Emps' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676 (3d Cir. 2011)); *see also In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *32 ("The court indicated that is such a theory [of corporate scienter] were viable, it would be in an instance of pervasive corporate misconduct, or blatantly false statements.").

For example, in *Cognizant Technology*, Judge Walls and Judge Salas both concluded that scienter could be imputed to the corporate defendant in light of allegations of a long-standing bribery scheme involving the company's president and other senior executives. *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *24-32; *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *33-34. In addition, in *Horizon Lines, Inc.*, the Circuit discussed two scenarios where use of the corporate scienter doctrine would be applicable. First, the Circuit briefly addressed *City of Monroe Employees Retirement System v. Bridgestone Corp.*, where the defendants were involved in a "large-scale secret settlement . . . to keep the scope of the problem from safety regulators in the United States and several other countries, as well as investors." *Horizon Lines, Inc.*, 442 F. App'x at 676 (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone*

*Corp.*, 399 F.3d 651, 656-59 (6th Cir. 2005)).   Next, the Third Circuit referenced a hypothetical provided by the Seventh Circuit, in which

> General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero.   There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Id.* (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)).

Here, assuming that the Third Circuit would recognize the corporate scienter doctrine, Plaintiffs fail to plead sufficient facts demonstrating that the application of the doctrine would be warranted.   The statements at issue largely involved Celgene's representations about the Phase III trial results for Ozanimod and timing for the NDA.   Plaintiffs allege that the statements were false and misleadingly because Celgene omitted information about the Metabolite.   *See, e.g.*, Compl. ¶ 279.   Plaintiffs, therefore, do not plead that Celgene made any blatantly false statements.   In addition, the allegations do not reflect a widespread and egregious corporate fraud.   Accordingly, the Court will not impute scienter to Celgene for statements that are not attributed to any specific Defendant.[13]   Thus, because Plaintiffs only allege scienter for Smith and Martin's Ozanimod statements, only statements that are attributed to these Defendants survive this motion.

### C.  Use of Confidential Witnesses

Finally, Defendants maintain that the Complaint must be dismissed in its entirety because Plaintiffs fail to sufficiently allege scienter.   The PSLRA scienter standard "requires plaintiffs to allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'"   *Avaya*,

---

[13] Defendants also argue that statements that only address the Phase III trials are also not actionable.   Each of these statements is corporate statement that is not directly attributed to an Individual Defendant.   *See* Compl. ¶¶ 262, 266.   As a result, the Court need not address this argument.

564 F.3d at 267 (quoting *Advanta*, 180 F.3d at 534-35).   In concluding that AMF sufficiently alleged scienter for Smith, Curran and Martin, the Court relied in part on statements from confidential witnesses, who were largely former employees and were referred to in the Class Action Complaint as "FEs".   *See, e.g.*, MTD Opinion at 42 ("Through FEs, Plaintiff provides sufficient circumstantial evidence to suggest that Curran's statement that Celgene was on-track to meet its 2017 goal was, at a minimum, recklessly made."); *id.* at 44 (discussing how information from confidential witnesses provided circumstantial evidence that Smith and Martin recklessly disregarded the risk that the Metabolite data would impact the Ozanimod NDA).   In this instance, Defendants contend that Plaintiffs improperly rely on AMF's FEs to establish scienter, and without the FEs, Plaintiffs cannot establish scienter for Curran, Smith and Martin.   Defs. Br. at 19-26.

As discussed in the MTD Opinion, plaintiffs may rely on confidential witnesses to establish a securities fraud claim.   To use information provided by a confidential witness, however, courts must "evaluat[e] the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'"   *Avaya*, 564 F.3d at 263 (quoting *Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 147 (3d Cir. 2004)).   In the MTD Opinion, the Court determined that generally, the FEs' information was sufficient to support a properly-pled complaint.   MTD Opinion at 24.   Despite this finding, Defendants now argue that Plaintiffs cannot use AMF's FEs because Plaintiffs do not even know who the FEs are. Defs. Br. at 23.   Defendants provide several cases to support their argument.[14]   *Id.*   But Defendants

---

[14] Defendants largely rely on *In re Lehman Brothers Securities & Erisa Litigation*, No. 10-6637, 2013 WL 3989066 (S.D.N.Y. July 31, 2013) for support.   Defs. Br. at 24.   In *Lehman Brothers*, the court was concerned that the uncorroborated witness statements pled in a different matter could be mischaracterized by attorneys.   *In re Lehman Bros.*, 2013 WL 3989066, at *4.   But there, the confidential witnesses were employees of a non-party entity and their statements were pulled from

do not cite to any cases from the Third Circuit.  In addition, other courts have rejected arguments like Defendants' arguments here.  *See, e.g.*, *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*, No. 10-864, 2014 WL 3569338, at *5 (E.D.N.Y. July 18, 2014) (recognizing that "district courts in this circuit have taken different positions on the question" of whether "plaintiffs may utilize allegations of confidential informants drawn from other complaints"); *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 225 (S.D.N.Y. 2008) ("Although the confidential informants are not personally known to Plaintiffs or Plaintiffs' counsel, the fact that the informants' accounts are derived from an earlier pleading in a different case simply does not render the instant pleading inadequate.").  Critically, none of Defendants' cases involve the circumstances here, in which a court already credited the information provided by confidential witness in the original Class Action.[15]  As a result, Defendants fail to persuasively argue that the Court should entirely reject information provided by the FEs, and Court will consider this information.  And because the Court already concluded that AMF sufficiently pled facts demonstrating scienter as to Smith, Curran and Martin, which can be imputed to Celgene, MTD Opinion at 40-46, the Court reaches the same conclusion here.[16]

## IV.    CONCLUSION

a complaint that involved entirely different parties.  *See id.* at *2, 3-4.  Here, Plaintiffs are members of the class action from which the allegations were pulled and are asserting virtually identical claims against four Defendants in the Class Action.  Simply stated, the *Lehman Brothers* court's concerns are not at issue here because Plaintiffs are using the information from the FEs for an identical purpose as in the Class action.

[15] The Court recognizes that if Plaintiffs' counsel does not know the identity of the FEs or the substance of the entirety of the FEs statements, Plaintiffs may be facing significant hurdles in discovery.  That issue, however, is not before the Court.

[16] Because the Court will not discredit statements from the FEs and concludes that Plaintiffs adequately establish scienter, the Court does not reach Defendants' argument about the core operations doctrine. Defs. Br. at 26.

In sum, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss. D.E. 6.  With respect to the portions of the Complaint that are dismissed, the dismissal is without prejudice.   Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiffs do not file an amended pleading in the allotted time, the dismissed claims will be dismissed with prejudice.   An appropriate Order accompanies this Opinion.

Dated: March 22, 2021

                                                            John Michael Vazquez, U.S.D.J.